IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL SIEGEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 07 C 913 |
| ) | |
| GENERAL STAR MANAGEMENT COMPANY, ) | Judge Coar |
| GENERAL REINSURANCE CORPORATION, ) | |
| GENERAL STAR NATIONAL INSURANCE ) | Magistrate Judge Ashman |
| COMPANY, and GENERAL STAR INDEMNITY ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Daniel Siegel, through his undersigned counsel, in response to the motion of defendants General Star Management Company, General Reinsurance Corporation, General Star National Insurance Company, and General Star Indemnity Company (collectively "General Star" or "Defendants") to dismiss plaintiff's complaint, states as follows:

**BACKGROUND**

This action arises out of General Star's repeated failure to fully compensate Mr. Siegel for valuable and beneficial work he performed for it. Mr. Siegel is a consultant who, among other things, transitions teams and/or groups of underwriters to insurance companies. (Compl. ¶ 5.)[1] In January 2002, an underwriting group headed by Faith Logsden (the "Logsden Group") joined General Star as a direct result of the efforts of Mr. Siegel. (Compl. ¶¶ 6-8.) The customary

---

[1] On a motion to dismiss, facts alleged in the complaint are taken as true. Wilczynski v. Lumbermen's Mut. Cas. Co., 93 F.3d 397, 401 (7th Cir. 1996).

1

compensation paid to a consultant such as Mr. Siegel for successful transition of underwriters is at least one percent of the gross written premiums ("GWP") underwritten by the transitioned underwriters for a period of thirty-six months following issuance of their first policy. (Compl. ¶ 9.) The Logsden Group's GWP for that period after joining General Star exceeded $100 million (Compl. ¶ 9), entitling Mr. Siegel to at least $1 million.

After the Logsden Group joined General Star, Patricia Roberts, president of General Star Management Company, confirmed that General Star would pay Mr. Siegel one percent of the Logsden Group's GWP (the "One Percent Agreement"). (Compl. ¶ 10.) Shortly thereafter, Ms. Roberts reneged, stating instead that General Star would pay Mr. Siegel only a flat fee of $140,000. (Compl. ¶ 11.) When Mr. Siegel protested, Ms. Roberts stated that Mr. Siegel would also be paid a reduced percentage of the Logsden Group's GWP. (Compl. ¶ 11.) The mechanism for payment of this reduced percentage was for Mr. Siegel to receive a portion of commissions generated by General Star's purchase from a third-party, Guy Carpenter & Company, Inc. ("Guy Carpenter"), of reinsurance on the Logsden Group's policies for two years. (Compl. ¶ 13.) Although entitled to the full amount of the One Percent Agreement, given Mr. Siegel's immediate financial situation and his desire to maintain a positive working relationship with General Star, Mr. Siegel agreed to Ms. Roberts's offer (the "First Executory Accord"). (Compl. ¶ 12.) General Star breached the First Executory Accord by failing to purchase reinsurance through Guy Carpenter for the full period contemplated by the parties. (Compl. ¶ 14.) Mr. Siegel demanded from Ms. Roberts the amount still owed to him under the First Executory Accord. (Compl. ¶ 15.) Ms. Roberts proposed to resolve any remaining dispute with Mr. Siegel for $135,000, which Mr. Siegel accepted (the "Second Executory Accord"). (Compl. ¶ 15.) General Star has failed to pay Mr. Siegel any of this amount. (Compl.

¶ 15.)

Count I of the complaint alleges that Mr. Siegel is entitled to one percent of the Logsden Group's GWP (an amount in excess of $1 million) under the One Percent Agreement. Counts II and III allege that, alternatively, Mr. Siegel is entitled to one percent of the Logsden Group's GWP under theories of breach of implied-in-fact contract and quantum meruit. Count IV alleges alternatively breach of the First Executory Accord, and Count V alleges alternatively breach of the Second Executory Accord. Defendants have moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, Defendants' motion should be denied.

## ARGUMENT

### Count I States a Claim for Breach of the One Percent Agreement

Defendants assert that Count I should be dismissed because the complaint "not only fails to allege the requisite elements of contract formation but . . . sets forth facts defeating any finding of an express contract." (Defs.' Mem. Supp. Mot. Dismiss at 5.) Both assertions contained in that statement are wrong. First, Defendants misunderstand the nature of federal notice pleading; Mr. Siegel need not allege the elements of contract formation.[2] Under Fed. R. Civ. P. 8, Mr. Siegel need only set forth "a short and plain statement of the claim showing that [he] is entitled to relief." Mr. Siegel has done just that here. As described above, Mr. Siegel alleges that he performed valuable work for General Star in transitioning the Logsden Group to them, and that General Star agreed to pay him one percent of the Logsden Group's GWP in return, which it did not. Such allegations provide clear notice to Defendants of what is at dispute, and, as the Seventh Circuit has repeatedly

---

[2] Federal pleading standards apply to this diversity case removed from state court. See, e.g., Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002).

instructed, that is all Mr. Siegel needs to do. See Hefferman v. Bass, 467 F.3d 596, 600 (7th Cir. 2006) ("In federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action;' not legal theories."); Simpson v. Nickel, 450 F.3d 303, 306 (7th Cir. 2006) ("[Plaintiff's] grievance was set out clearly enough to put the defendants on notice; no more is required."); Kolupa v. Roselle Park Dist., 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate."); Doe v. Smith, 429 F.3d 706, 707 (7th Cir. 2005) ("[Plaintiffs] need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of. [Plaintiff] has done that; it is easy to tell what she is complaining about."); Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) ("All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.").[3]

Second, Defendants misunderstand Illinois substantive contract law.[4] Mr. Siegel has not alleged anything defeating a finding of an express contract. Contrary to Defendants' assertion, the fact that General Star's promise to pay Mr. Siegel one percent of the Logsden Group's GWP occurred *after* he had already transitioned the Logsden Group to General Star does not undermine his breach of contract claim. While Defendants correctly cite the "general rule" that if the alleged

---

[3]    Indeed, one of the cases cited by Defendants expressly contradicts their assertion that Mr. Siegel needs to allege the requisite elements of contract formation. See Cleland v. Stadt, 670 F. Supp. 814, 817 (N.D. Ill. 1987) (Aspen, J.) ("Plaintiff need not allege each of the elements of contract formation.") cited in (Defs.' Mem. Supp. Mot. Dismiss at 5).

[4]    Defendants do not suggest that anything other than Illinois law applies to the substantive matters in this diversity action removed from Illinois state court. Plaintiff agrees that Illinois law governs the substantive issues in this case.

consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract, (Defs.' Mem. Supp. Mot. Dismiss at 5-6), "[a]s with all general rules, there are exceptions." Worner Agency, Inc. v. Doyle, 479 N.E.2d 468, 473, 88 Ill. Dec. 855, 860 (Ill. App. Ct. 1985). One such exception is where "the alleged consideration was of a 'beneficial' or 'meritorious' nature which placed the promisor under a moral duty or obligation such that consideration for the promise will be implied." Id. See also Restatement (Second) of Contracts § 86(1) (1981) ("A promise made in recognition of a benefit previously received by the promisor from the promisee is binding to the extent necessary to prevent injustice."). In Worner Agency, the plaintiff had informed a construction company of a potential project, delivered preliminary plans of the project to the construction company, and put the construction company in touch with the potential clients. 479 N.E.2d at 473, 88 Ill. Dec. at 860. The court enforced the construction company's subsequent promise to pay a finder's fee to plaintiff, holding that plaintiff's prior actions, beneficial to the construction company, constituted adequate consideration for the subsequent promise. Id. at 474. See also Yale Sec., Inc. v. Freedman Sales, Ltd., No. 96 C 6501, 1997 WL 51428, at *4 (N.D. Ill. Feb. 3, 1997) (Coar, J.) (refusing to find commission agreement unenforceable for lack of consideration where promisee had provided past services to promisor, citing Worner Agency). Here, the complaint alleges that Mr. Siegel's efforts in transitioning the Logsden Group to General Star were beneficial and meritorious to General Star. (Compl. ¶ 19.) Those efforts constitute adequate consideration to support the One Percent Agreement, even though provided prior to General Star's promise.

Because the complaint sufficiently states a claim for breach of the One Percent Agreement under federal notice pleading standards, and does not contain any allegations suggesting a lack of

5

consideration, Count I of the complaint should not be dismissed.

**Counts II and III State Claims for Breach of Implied-in-Fact Contract and Quantum Meruit**

Defendants assert that Mr. Siegel may not allege breach of an implied-in-fact contract (Count II) or quantum meruit (Count III) because he also alleges breaches of express contracts (Counts I, IV, and V). Again, Defendants misunderstand federal pleading. Under Fed. R. Civ. P. 8(e)(2), a party may "set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses." Further, a party may also "state as many separate claims or defenses as the party has regardless of consistency." Id. Despite any potential inconsistency in ultimately *recovering* under more than one contract theory (express, implied-in-fact, or quasi-contract/quantum meruit), Mr. Siegel may *plead* such theories of recovery in the alternative. See Chicago Title Ins. Co. v. Plitt Theaters, Inc., No. 95 C 3892, 1995 WL 716641, at *3 (N.D. Ill. Dec. 1, 1995) (Coar, J.) ("[W]here a separate count [of unjust enrichment] is pled in the alternative to a count in which a contract is alleged, the Federal Rules of Civil Procedure allow for such inconsistent pleading."); Rose Importing & Distrib., L.L.C. v. Seesaw, Inc., No. 06 C 3623, 2007 WL 551572 (N.D. Ill. Feb. 21, 2007) (Gettleman, J.) ("Defendant argues that plaintiff cannot plead quantum meruit where there is an asserted express contract at issue. Defendant is wrong. Pursuant to Fed. R. Civ. P. 8(e)(2), a plaintiff may plead contradictory claims in the alternative."). Here, each of Mr. Siegel's counts is expressly pled in the alternative to every other count (Compl. ¶¶ 23, 29, 39, 43), and his implied-in-fact contract and quantum meruit counts incorporate only his general factual allegations, not the allegations of any other count (Compl. ¶¶ 22, 28).

The cases cited by Defendants do not support their argument. As Defendants acknowledge, (Defs.' Mem. Supp. Mot. Dismiss at 9), the court in Allied Vision Group, Inc. v. RLI Professional

6

Technologies, Inc., 916 F. Supp. 778, 782 (N.D. Ill. 1996 (Williams, J.), stated that "Rule 8(e)(2) allows inconsistency between claims." While that case also suggested that Rule 8 does not allow inconsistency within a single claim, as noted above, that is not what Mr. Siegel has done here. Further, in Allied Vision Group, the existence of an express contract was not in dispute. Id. at 781 ("The only issue in the case . . . involves contract interpretation. . . . That the agreement between [the parties] was a contract is not in dispute."). Indeed, the defendant there moved only to dismiss the unjust enrichment count of the two-count complaint, not the breach of contract count. Id. at 780. Here, in contrast, the existence of an express contract is purportedly very much in dispute.[5] Consequently, dismissal of Counts II and III based on allegations in other counts of the existence of express contracts would be premature. See Air Exchange v. BCI Aircraft Leasing, No. 00 C 2551, 2001 WL 185475, at *4 (N.D. Ill. Feb. 26, 2001) (Andersen, J.) (holding that dismissal of quasi-contract count based on allegation of express contract would be premature where it was entirely possible that the court could rule at a later stage of the case that no express contract existed). Defendants' citation to Zadrozny v. City Colleges of Chicago, 581 N.E.2d 44, 163 Ill. Dec. 93 (Ill. App. Ct. 1991) is similarly inapposite. As in Allied Vision Group, the existence of an express contract was not in dispute.[6] In any event, that case was not decided under federal pleading rules, which apply here and allow Mr. Siegel's alternative pleadings.

---

[5] Mr. Siegel would be happy to drop his claims for breach of an implied-in-fact contract and quantum meruit if Defendants were to admit that the One Percent Agreement is a valid and enforceable contract.

[6] In Zadrozny, a teacher sought compensation from his employer above his regular salary for time spent responding to an administrator's request for information regarding a student. The court denied his assertion that an implied contract existed entitling him to additional compensation because, among other things, he was already "subject to specific rules and regulations regarding the responsibilities of teachers." 581 N.E.2d at 48, 163 Ill. Dec. at 97.

7

Because Mr. Siegel's counts for breach of implied-in-fact contract and quantum meruit have been properly pled in the alternative to his count for breach of express contract, and the existence of an express contract is disputed in any event, Counts II and III should not be dismissed.

**Counts IV and V State Claims for Breaches of the Executory Accords**

Defendants assert that Counts IV and V should be dismissed on the ground that the complaint does not allege proper consideration for the accords alleged in those counts. Again, federal notice pleading standards preclude dismissal on that ground, as Mr. Siegel need not allege consideration to state a claim for breach of the accords. See Great-West Life & Annuity Ins. Co. v. Weisz Michling Hofmann, P.C., No. 01 C 2470, 2001 WL 1223561, at *2 (N.D. Ill. Oct 11, 2001) (Aspen, J.) (holding that under federal notice pleading regime, plaintiff is not required to allege consideration to state a claim for breach of contract); Landmark Document Servs., LLC v. Omega Litigation Solutions, LLC, No. 05 C 7300, 2006 WL 2861098, at *2-3 (N.D. Ill. Sept. 29, 2006) (Valdez, Mag.) (same). See also Simpson, 450 F.3d at 305 ("Any district judge (for that matter any defendant) tempted to write 'this complaint is deficient because it does not contain. . .' should stop and think: What rule of law *requires* a complaint to contain that allegation? . . . Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b).") (internal quotations omitted) (emphasis in original).

In any event, Mr. Siegel has alleged consideration sufficient to support the accords here. An accord is a contract under which an obligee (here, Mr. Siegel) promises to accept a stated performance in satisfaction of the obligor's (here, General Star's) existing duty. Restatement (Second) of Contracts § 281(1). See also Real Estate Value Co. v. USAir, Inc., 979 F. Supp. 731, 739 (N.D. Ill. 1997) (Bucklo, J.) ("An executory accord is an agreement that an existing claim shall

8

be discharged in the future by the rendition of a substituted performance. . . . Executory accords are valid under Illinois contract law.") (internal quotations omitted). The typical accord involves an exchange of promises. Restatement (Second) of Contracts § 281 cmt. a. The obligee's promise to accept substituted performance in satisfaction of the original duty may be supported by consideration because that performance differs significantly from that required by the original duty or because the original duty is in fact doubtful or is believed by the obligor to be so. Id. at cmt d.

Here General Star's original duty was to pay Mr. Siegel one percent of the Logsden Group's GWP. (Compl. ¶¶ 10, 26, 36.) Pursuant to the First Executory Accord (properly pled in the alternative), Mr. Siegel agreed to accept substituted performance in satisfaction of General Star's obligation. (Compl. ¶ 40.) The substituted performance promised was adequate consideration because it differed significantly from General Star's original duty. While the original duty consisted of General Star's payment of one percent of the Logsden Group's GWP over three years, the substituted performance consisted of payment of $140,000 and Mr. Siegel's receipt of a portion of commissions generated by General Star's purchase of reinsurance from Guy Carpenter for two years. (Compl. ¶¶ 11-13.) Similarly, Mr. Siegel's promise under the Second Executory Accord to accept substituted performance (also properly pled in the alternative) was supported by consideration because the substituted performance, payment of $135,000, differed significantly from General Star's original duty, payment of one percent of the Logsden Group's GWP, or, alternatively, payment of $140,000 and Mr. Siegel's receipt of Guy Carpenter commissions under the First Executory Accord. (Compl. ¶ 44.)

In addition, Mr. Siegel's promise to accept substituted performance under either the First or Second Executory Accords was supported by consideration because General Star's original

obligation was disputed. Defendants' citation to <u>Hennecke v. Warp</u>, 107 N.E.2d 185 (Ill. App. Ct. 1952) is inapposite. In that case the court found no accord and satisfaction where a salesman entitled to a one percent commission accepted a check that he claimed did not correctly reflect the commission he was owed. There, however, there was no dispute that the salesman was entitled to a one percent commission, and the check was delivered and accepted on the condition that if there were any errors in the amount, corrections would be made. <u>Id</u>. at 430. Here, in contrast, there clearly was (and remains) a dispute as to the amount owed to Mr. Siegel for his efforts in transitioning the Logsden Group. Defendants' promise to pay Mr. Siegel for disputed claims constitutes sufficient consideration for Mr. Siegel's promise to accept such payment in full satisfaction of his claims. Thus, although Mr. Siegel was not required to allege that the First and Second Executory Accords were supported by consideration, because the substituted performance promised by General Star under those accords differed significantly from its original obligations, and because its original obligations were disputed, he has done so.

<u>Newsub Magazines Services LLC v. Heartland Direct, Inc.</u>, No. 02 C 4949, 2004 WL 524689 (N.D. Ill. Mar. 16, 2004) (Grady, J.), cited by Defendants, is distinguishable. In that case, Newsub sued Heartland to recover $900,000 owed to it under an agreement between the two parties. <u>Id</u>. at *1. Heartland admitted the existence of an agreement, but argued that Newsub had promised to provide Heartland with a release in exchange for Heartland's payment of the money owed. <u>Id</u>. at *2, *4. Because Newsub did not provide Heartland with a release, Heartland asserted that it was not obligated to turn over the money owed. <u>Id</u>. at *5. In rejecting this defense, the court noted that any agreement by Newsub to provide a release in exchange for Heartland's payment of money it already owed would be uneforceable for lack of consideration. <u>Id</u>. Thus, in contrast to the present case, the

10

purported substitute performance in <u>Newsub</u> was both identical to the original obligation and not disputed. Further, <u>Newsub</u> was a decision on a motion for summary judgment where defendant was asserting an accord as a defense, as opposed to the matter presently before the court, which is a motion to dismiss an affirmative claim of breach of an accord.[7]

Defendants further argue that even if the First Executory Accord was a valid agreement, Mr. Siegel does not allege a breach by General Star. Defendants start by mischaracterizing the agreement. Under the First Executory Accord, General Star agreed to pay Mr. Siegel a reduced percentage of the Logsden Group's GWP (.625% of GWP for the first year, and .3125% of GWP for the second year). (Compl. ¶¶ 11-12.)[8] While the intended mechanism by which Mr. Siegel would receive the reduced percentage of the Logsden Group's GWP was through receipt of commissions generated by General Star's purchase of reinsurance on the Logsden Group's policies through Guy Carpenter, (Compl. ¶ 13), the First Executory Accord was not, as characterized by Defendants, simply an agreement "to arrange for Plaintiff to enter into an agreement with Guy Carpenter." (Defs.' Mem. Supp. Mot. Dismiss at 7.) Thus, contrary to Defendants' argument, Mr. Siegel's allegation that General Star secured the agreement of Guy Carpenter for Mr. Siegel to receive a portion of the reinsurance commissions, (Compl. ¶ 14), does not allege satisfaction of General Star's

---

[7] Defendants imply, but do not expressly argue, that because accords are typically raised as a defense, Mr. Siegel may not properly assert breach of accord as a cause of action. (Defs.' Mem. Supp. Mot. Dismiss at 6.) Such a suggestion is unwarranted. See <u>Real Estate Value Co.</u>, 979 F. Supp. at 739 ("If the substituted performance never occurs, a party may sue on either the original claim or the executory accord."); <u>Gord Indus. Plastics, Inc. v. Aubrey Mfg., Inc.</u>, 431 N.E.2d 445, 448, 59 Ill. Dec. 160, 163 (Ill. App. Ct. 1982) ("Accord and satisfaction may be the basis for a complaint . . . and a party may sue another for non-compliance of an agreement.").

[8] As noted previously, the First Executory Accord also included an agreement by General Star to pay Mr. Siegel $140,000. General Star's performance of that portion of the First Executory Accord is not disputed.

11

obligation under the First Executory Accord.

The complaint alleges (1) that under the First Executory Accord General Star agreed to pay Mr. Siegel the reduced GWP, (Compl. ¶ 11), and (2) that the intended mechanism by which he would receive these amounts was through receipt of commissions from General Star's purchase of reinsurance through Guy Carpenter for two years, (Compl. ¶ 13). The reasonable inference to be drawn from these allegations is that General Star agreed to purchase reinsurance through Guy Carpenter for two years.[9] In any event, whether or not General Star's agreement to purchase reinsurance through Guy Carpenter for two years was expressly incorporated into the First Executory Accord, General Star had an obligation under the duty of good faith and fair dealing to do so. Under the duty of good faith and fair dealing, a party vested with discretion under a contract must exercise that discretion "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." Schwinder v. Austin Bank of Chicago, 809 N.E.2d 180, 193, 284 Ill. Dec. 58, 71 (Ill. App. Ct. 2004). The duty of good faith and fair dealing is implied in every contract. Id. Here, to the extent General Star had discretion to choose whether or not to purchase reinsurance from Guy Carpenter, it had a duty to exercise such discretion reasonably and not inconsistently with the reasonable expectations of the parties. The parties intended, and reasonably expected, that General Star would purchase reinsurance through Guy Carpenter (thus generating commissions for Mr. Siegel) for two years. (Compl ¶ 13.) In fact, General Star did not purchase reinsurance through Guy Carpenter for two years, however, (Compl. ¶ 14), and Mr. Siegel has thus properly alleged a breach of the First Executory Accord. See VR

---

[9] On a motion to dismiss, all inferences drawn from the allegations in the complaint are drawn in the light most favorable to the non-moving party. Wilczynski, 93 F.3d at 401.

12

Holdings, Inc. v. LaSalle Business Credit, Inc., No. 01 C 3012, 2002 WL 356515, at *4 (N.D. Ill. Mar. 6, 2002) (Coar, J.) (refusing to dismiss breach of contract count alleging breach of duty of good faith and fair dealing, citing federal notice pleading standards).

Because the complaint more than adequately alleges consideration for the executory accords as well as their breach under federal notice pleading standards, Counts IV and V should not be dismissed.

**The Complaint Alleges Actionable Conduct by All Defendants**

Finally, Defendants argue that the complaint should be dismissed as to General Reinsurance Corporation ("General Re"), General Star National Insurance Company ("National"), and General Star Indemnity Company ("Indemnity") because the complaint fails to allege that Mr. Siegel entered into any agreements with any of those entities. Defendants cite absolutely no authority in support of their proposition, and indeed, Seventh Circuit authority is to the contrary. See Palmer v. Board of Educ. of Community Unit Sch. Dist. 201-U, 46 F.3d 682, 688 (7th Cir. 1995) (overturning district court's dismissal of various defendants where the complaint did not specify any wrongful conduct of those defendants in particular, because under federal notice pleading standards, "[i]t is enough to specify the wrong done and leave details to later steps"). Here, Mr. Siegel has alleged on information and belief the corporate relationships among the parties, (Compl. ¶¶ 2-4), and refers throughout the complaint to all the named defendants collectively.[10] This is sufficient at the pleading stage. See, e.g., Coexist, LLP v. Cafepress.com, No. 1:05-CV-0673, 2006 WL 120183, at *2 (S.D.

---

[10] Specifically, Mr. Siegel alleges that senior management of General Star Management Company report to and act at the discretion of senior management of General Re, (Compl. ¶ 3), and that General Star issues policies through National and Indemnity, (Compl. ¶ 4). Because General Star issues its policies through National and Indemnity, those entities were beneficiaries of Mr. Siegel's work in transitioning the Logsden Group.

13

Ind. Jan. 17, 2006) (rejecting defendants' argument on motion to dismiss that complaint referring to defendants collectively throughout instead of specifying which defendant was accused of what was insufficiently specific); Jordan v. Trans Union LLC, 377 F. Supp. 2d 1307, 1307-08 (N.D. Ga. 2005) (refusing to dismiss complaint collectively referring to two defendants as "Sallie Mae," finding that "the allegations in the amended complaint against 'Sallie Mae' are sufficient to satisfy the general pleading requirements of Fed. R. Civ. P. 8(a)"). General Re, National, and Indemnity should not be dismissed.[11]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: April 2, 2007                                          DANIEL SIEGEL

                                                              By: _____
                                                              One of his attorneys

Marc O. Beem
Roger J. Perlstadt
Miller Shakman & Beem LLP
180 N. La Salle Street
Suite 3600
Chicago, Illinois 60601
(312) 263-3700

---

[11] While there is some authority for the proposition that allegations must be made specifically against each of multiple defendants in complaints subject to the heightened pleading requirements of Rule 9(b), that rule is not applicable here, and in any event, even when Rule 9(b) applies, the requirement may be relaxed where the multiple defendants at issue are related corporate entities. See Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1329 (7th Cir. 1994) ("We will assume for purposes of our discussion that [plaintiff's failure to distinguish among defendants] can . . . be overlooked . . . given that the three corporate defendants in this case are related corporations that can most likely sort out their involvement without significant difficulty."); Duggan v. Terzakis, 275 F. Supp. 2d 968, 973 (N.D. Ill. 2003) (St. Eve, J.) ("[W]hile Plaintiffs 'lump together' multiple Defendants throughout their Complaint, which is typically insufficient to satisfy Rule 9(b) particularity, Plaintiffs also allege substantial overlapping ownership among the entities. . . . It is clear that Plaintiffs have provided [defendant] with sufficient information to answer the allegations.").

14

## CERTIFICATE OF SERVICE

The undesigned, an attorney, hereby certifies that on **April 2, 2007,** he served a copy of the foregoing **Plaintiff's Response to Defendants' Motion to Dismiss** on the parties listed below by electronic means pursuant to Electronic Case Filing (ECF):

Sarah Hope Dearing
Lord Bissell & brook
111 South Wacker Drive
Chicago, IL 60606
sdearing@lordbissell.com

Joseph A. Hinkhouse
Lord Bissell & Brook
111 South Wacker Drive
Chicago, IL 60606
jhinkhouse@lordbissell.com

_____
Roger J. Perlstadt